IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jaycee Wamer                                           Case No. 20cv942

       Plaintiff,

    v.                                                     **ORDER**

University of Toledo

       Defendant.

On the date of the events giving rise to this suit, plaintiff Jaycee Wamer was a student at the University of Toledo ("University" or "UT"). She was enrolled in a communications class; the instructor was Erik Tyger. She brings this suit under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* She claims that after she promptly reported an incident of sexual harassment, the University failed to investigate and take necessary corrective action. In doing so, the University manifested deliberate indifference towards her and her complaint.

Pending is the University's motion to dismiss (Doc. 5), to which plaintiff has filed an opposition (Doc. 6), and UT has filed a reply. (Doc. 7). I granted plaintiff's motion for leave to file her sur-reply (Doc. 10).

For the reasons that follow, I grant the University's motion.

**Background**

On May 2, 2018, plaintiff was at UT's Media Center, working to complete a project before its deadline. As she was doing so, Tyger came from behind, placed his arm around her, resting it on her chest while touching her hair. Plaintiff continued working; when she completed the project, she asked Tyger for permission to use the computer in his office to print it out.

Once in his office, he sat down between plaintiff and the printer. Tyger asked plaintiff about her job at Maumee Bay State Park; he told her that he once worked there. He also stated that he "would go into empty rooms to f*** women."

Plaintiff had to lean across Tyger to use the printer. As she did so, he bent his head against plaintiff, told her she smelled good, and asked what kind of perfume she wore. He also placed his hand on the middle of her thigh.

Thereafter, Tyger sent plaintiff three text messages – one the same day, the other two the following day. The first was, "you'd better come visit me again?" The next asked about her work schedule, and the last was, "Or don't answer me. It's cool." Plaintiff did not respond.

On May 4th, plaintiff contacted another faculty member, Kevin O'Korn. She told him that Tyger "had made unwelcome sexual advances toward her." Mr. O'Korn submitted a complaint on plaintiff's behalf to the University's Office of Title IX and Compliance. Plaintiff submitted her complaint that day as well.

In addition to the specific allegations about Tyger's conduct and text on May 2nd and texts on May 3rd, Ms. Wamer also alleges that Tyger "frequently made inappropriate comments to [his] class, including that students should ask about [his] drug overdose, that [he] would not have gotten married at such a young age if his wife had not been pregnant, and that concerning the '#metoo' movement against sexual assault and harassment, [he] believed that the women were 'asking for it.'" There is no further detail about these comments provided.

At some point soon thereafter someone from UT's Title IX Office contacted plaintiff. She was asked if she would feel "comfortable" with a face-to-face on-campus interview about her allegations. Fearing a possible encounter with Tyger, she said she would not feel comfortable coming on campus. She did not, however, indicate that she would not otherwise participate fully

2

in an investigation of Tyger's conduct. The University never indicated that an on-campus interview was necessary for it to go forward with an investigation.

Three weeks after receiving the reports, the University notified plaintiff that it was closing its investigation and would be taking no action.

As a result of the University's inaction, plaintiff continued to fear coming on campus. She changed her major from communications and enrolled in online courses.

In October, 2018, O'Korn arranged a meeting between plaintiff and Deloris Drummond, a more senior faculty member. After the meeting, which occurred on October 26, 2018, Ms. Drummond filed a complaint about Tyger's actions with the Title IX Office. That office notified plaintiff on November 7, 2018, that it had received another report about Tyger's sexual harassment of her.

Also on November 7th, the University placed Tyger on administrative leave. Thereafter, Tyger unsuccessfully tried to speak with plaintiff on campus, publicly accused her of lying, and disclosed the grades he had given her.

On January 7, 2019, UT Title IX investigators Stacy Latta and Ardy Goyer spoke with O'Korn. He confirmed that plaintiff remained uncomfortable about speaking to anyone about the situation other than an investigator.

On April 3, 2019, the University notified Tyger that he was terminated effective May 6, 2019. A disciplinary hearing on May 10, 2019 found that Tyger had engaged in sexual misconduct as plaintiff had alleged.

As her sole claim for relief, plaintiff seeks damages for the alleged deliberate indifference with which, she claims, the University treated the three complaints – hers, O'Korn's, and Drummond's – about Tyger's sexual harassment.

**Standard**

A motion to dismiss is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must allege facts that are sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* I must accept the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

**Discussion**

In *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, (1998), the Supreme Court held a victim of sexual harassment can recover damages under Title IX from a university that receives federal funds. To prevail, the plaintiff must prove that the university's response to her complaint of sexual harassment was inadequate.

Recovery from a university, in the context of teacher-on-student harassment, as is the case here, results only when the university has actual notice of, and is deliberately indifferent to, the teacher's sexual harassment. *Id.* at 292-93. Actual notice is not in dispute here.

**1. Severe, Pervasive, and Objectively Offensive**

The University argues that plaintiff cannot establish that "she endured severe, pervasive, and objectively offensive harassment about which the University was aware." (Doc. 5, pgID #118) (citing *Davis v. Monroe Bd. of Educ.,* 526 U.S. 629, 652 (1999). I agree that she has not

4

put forth facts that plausibly establish that she suffered severe, pervasive, and objectively offense harassment. That, however, is not the correct standard.

The Court's decision in *Davis* involved student-on-student harassment. *Id.* at 632. The Court emphasized that students lack the maturity and moral compass to interact appropriately with each other:

> [A]t least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it . . . in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

*Id.,* 651-52.

Erik Tyger was not a teenager; he was an adult. He was not a fellow student; he was a faculty member. Thus, a university student victimized by a faculty member's sexual harassment need not allege that she (or he) endured "severe, pervasive, and objectively offensive harassment." Such plaintiff need only allege that the faculty member's misconduct amounts to actionable sexual harassment, which she has.

### 2. Deliberate Indifference

To state a Title IX claim against a university, the plaintiff must plead the elements of a deliberate indifference intentional tort: 1) institutional knowledge; 2) an act of sexual harassment; 3) consequent injury; and 4) causation. *See Kollaritsch v, Mich. State Univ. Bd. of Trustees,* 944 F.3d 613, 621 (6th Cir. 2019). A university's response to allegations of sexual harassment amounts to deliberate indifference only if its response is clearly unreasonable in light of known circumstances. *Davis, supra,* 526 U.S. at 648.

5

On a university campus, this standard applies both to teacher-on-student and student-on-student harassment. *Williams v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 367 (6th Cir. 2005) ("It is clear from a reading of *Gebser* and *Davis*, that the Court is discussing only one standard for 'deliberate indifference' under Title IX pupil harassment cases, and not, as [plaintiff] contends, one standard for student-on-student harassment and a less stringent standard for teacher-on-student harassment."). *Accord, Meng Huang v. Ohio State University*, 2020 WL 531935, at *9 (S.D.Ohio, 2020) (citing *Williams*, supra, 400 F.3d at 367); *K.S. v. Detroit Public Schools*, 2015 WL 4459340, at *14–15 (E.D.Mich., 2015).

The decision in *Davis* instructs courts that a university may not be held liable for damages unless its deliberate indifference "subjects its students to harassment." 526 U.S. at 644. The Court stated that "deliberate indifference must, at a minimum, 'cause [students] to undergo harassment or make them liable or vulnerable' to it." *Davis,* 526 U.S. at 645.

According to Sixth Circuit precedent:

> The *Davis* Court described wrongful conduct of both *commission* (directly causing further harassment) and *omission* (creating vulnerability that leads to further harassment). The definition presumes that post-notice harassment has taken place; vulnerability is simply an alternative pathway to liability for harassment, not a freestanding alternative ground for liability. In sum, the vulnerability component of the ... 'subjected' definition was not an attempt at creating broad liability for damages for the *possibility* of harassment, but rather an effort to ensure that a student who experiences post-notice harassment may obtain damages regardless of whether the harassment resulted from the institution *placing* the student in a position to experience that harassment or *leaving* the student vulnerable to it.

*Kollaritsch, supra,* 944 F.3d at 623, quoting Zachary Cormier, Is Vulnerability Enough? Analyzing the Jurisdictional Divide on The Requirement For Post-Notice Harassment in Title IX Litigation, 29 Yale J.L. & Feminism 1 (2017).

Though Tyger subjected plaintiff to unwelcome and indefensible sexual harassment, plaintiff does not allege that the University's action post-notice was detrimental in that it resulted in harassment or that the University's insufficient action made "the victim more vulnerable to, meaning unprotected from, further harassment." *Id.*

In pertinent part, plaintiff alleges, that, after filing a complaint with UT's Title IX Office: 1) she informed the Title IX Office that she was not comfortable attending an on-campus face-to-face interview with a Title IX investigator (Doc. 1, ¶¶ 38-39); 2) UT informed plaintiff it would continue to pursue the case even if she did not attend an interview (*Id.* at ¶ 41); 3) plaintiff did not indicate to UT's Title IX Office that she did not wish to pursue her complaint against Tyger (*Id.* at ¶ 43); 4) three weeks after plaintiff made her initial complaint to the Title IX Office, UT notified her that they completed its investigation and would not take action against Tyger (*Id.* at ¶ 44); and 5) UT's inaction caused her to fear visiting campus and attending in-person courses to such an extent that she changed her major and enrolled in online classes (*Id.* at ¶ 45, 46).

This set of facts infers that UT received plaintiff's complaint, contacted plaintiff to discuss the complaint, investigated the complaint with the information plaintiff had provided, and ultimately chose to not take action against Tyger. Plaintiff then chose to change her major, move off campus, and enroll in online courses.

Nothing in the plaintiff's complaint plausibly alleges that UT's actions subjected her to a risk of further sexual harassment or made her more vulnerable to or unprotected from it. Plaintiff's subjective dissatisfaction with the the investigation's outcome does not plausibly support an inference that UT's response, to engage in a three-week investigation unaided by plaintiff, left her exposed to a risk of further sexual harassment or caused her to be more vulnerable to such sexual harassment.

7

## Conclusion

Without facts that support an inference that the University's response was clearly unreasonable, plaintiff's claim fails to state a cause of action for deliberate indifference to her sexual harassment complaint.

It is, accordingly, hereby

ORDERED THAT the defendant's motion to dismiss (Doc. 5) be, and the same hereby is granted.

So ordered.

/s/ James G. Carr<br>
Sr. U.S. District Judge